UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:21-CR-64 JD |
| TONYA ROBINSON et al. | |

**OPINION AND ORDER**

The Government has submitted a *Santiago* proffer in which it seeks preliminary admission of statements against Defendants Tonya Robinson, Albert Smith, and Douglas Donley. The proffer describes the evidence that the Government will present at trial to prove a conspiracy to defraud the Housing Authority of South Bend ("HASB"). (DE 202 at 7–11.) The proffer also describes evidence that the Government will present to show that Robinson, Smith, and Donley were members of the conspiracy. (*Id.* at 9–11.) After considering the Government's submission, and the Defendants' responses, the Court finds that the Government has satisfied the requirements under Federal Rule of Evidence 801(d)(2)(E) to admit statements as non-hearsay evidence under the conspirator exception, subject to the presentation of evidence at trial.

**A. Legal Standard**

An out of court statement offered for the truth of the matter asserted is generally inadmissible hearsay. Fed. R. Evid. 801(c); 802. But under Rule 801(d)(2)(E), a statement that would otherwise be hearsay is not considered hearsay where "[t]he statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." The Court is required under Federal Rule of Evidence 104(a) to "make a preliminary determination regarding the admissibility of the declaration of a coconspirator."

*United States v. Rodriguez*, 975 F.2d 404, 406 (7th Cir. 1992). As a condition of admission of such statements, the government must demonstrate by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant and declarant were both members of the conspiracy; and (3) the statements to be admitted were made in the course of and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Bey*, 725 F.3d 643, 648 (7th Cir. 2013); *Rodriguez*, 975 F.2d at 406.

The Seventh Circuit has endorsed a process for admitting statements under this rule by which a district court may conditionally admit the statements based on a pretrial proffer by the government, subject to reevaluation at trial based on the evidence actually presented. *United States v. McClellan*, 165 F.3d 535, 553–54 (7th Cir. 1999); *United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009). In making its determination, the Court must decide "if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy." *United States v. Santiago*, 582 F.2d 1128, 1134 (7th Cir. 1978). The Court may consider the proffered statements themselves as evidence of both the existence of a conspiracy and the defendant's participation in the conspiracy, but the contents of the statements must also be corroborated by at least some supporting evidence. *United States v. Harris*, 585 F.3d 394, 398–99 (7th Cir. 2009). Such evidence may be either direct or circumstantial. *See United States v. Johnson*, 592 F.3d 749, 754–55 (7th Cir. 2010).

### B. Discussion

#### *(1) Evidentiary objections to some of the evidence of a conspiracy*

Prior to discussing whether the Government's proffer sufficiently alleges a conspiracy, the Court will resolve an objection to the admission of evidence of the conspiracy. Ms. Robinson and Mr. Smith object to the Court's consideration of several categories of documents for the purposes of evaluating whether a conspiracy exists. These documents include casino records involving the defendants, and some of their personal bank and tax records.

Ms. Robinson specifically argues that the Government's proffered casino records do not actually reflect what the Government claims they do, namely Ms. Robinson's gaming wins and losses. Ms. Robinson argues that these records show the activity of several individuals with access to her gaming accounts and are not confined to only her activities. The appropriate remedy for this issue is cross examination of witnesses and presentation of evidence to rebut the Government's contention at trial. In a related vein, Mr. Smith challenges the admissibility of casino, bank, and tax records which relate to him in a separate motion *in limine*. (*See* De 239 at 1.) Mr. Smith cross applies his argument that these records are unreliable and therefore not admissible on relevance grounds. Again, the normal appropriate remedy to challenge reliability of documents is cross examination and presenting evidence to rebut the Government's contention.[1]

To the extent the Defendants seek to exclude the Court considering the existence of these documents in making a preliminary determination of whether a conspiracy existed, based on the documents alleged unreliability, that request will be denied. At this stage the Court has not seen these documents and cannot properly evaluate the Defendants' claims of unreliability. The reliability or accuracy of these documents is an issue the Court expects will be thoroughly

---

[1] This order does not constitute a ruling on the separate motion *in limine*, or any challenges to admissibility raised there but not incorporated in the *Santiago* response. The Court will separately rule on the motion *in limine* and arguments contained therein.

3

explored at trial and, to the extent necessary, can be readdressed when the Court makes a final ruling on the admissibility of coconspirator statements after seeing the evidence. At this preliminary phase the Court has no basis to conclude that the Government's representation of these documents is inaccurate or are insufficient to make the purported inference. Again, the Court's final ruling on whether the Government's evidence has established the existence of a conspiracy will come during trial after the evidence has been introduced and examined.

Further, even if the Court excluded these documents in making its preliminary determination, it would not change the outcome of its ruling on the *Santiago* proffer. As will be discussed below, the Government proffers a considerable amount of evidence besides the challenged documents in support of the contention that a conspiracy existed. The Defendants have not raised any challenge to this other evidence, and it is sufficient for the Government to carry its burden at this preliminary stage.

### *(2) Existence and Membership in a Conspiracy*

Having address the Defendants' preliminary evidentiary objections the Court will move on to whether the evidence shows there was a conspiracy. The Court finds that there is sufficient evidence, making it more probable than not, that all three Defendants were members in the conspiracy to defraud the HASB.

The Government alleges the Defendants engaged in a "hub and spoke" kickback scheme from July 2014 until at least September 2019, to defraud the HASB.[2] As part of its operations,

---

[2] Mr. Smith objects to the sufficiency of the *Santiago* proffer by alleging it does not contain the start and end dates of the conspiracy. This is not quite correct. While the Government could have made the point more clearly, they incorporate by reference the Superseding Indictment (DE 202 at 7), which articulates the conspiracy's start and end (DE 63 at 5.) The Court would remind the Government that at trial they must show the alleged coconspirator statements took place during the time of the conspiracy as alleged in the superseding indictment.

4

the HASB manages more than 800 public housing units throughout South Bend and is responsible for renovation and maintenance work on those units. Some of those duties are handled by the authority's internal maintenance workers and some are handled by outside contractors hired for particular jobs.

This conspiracy allegedly involved Ms. Robinson, Mr. Smith, and certain outside contractors hired to do work for the HASB. From July 2014 until September 2019, Ms. Robinson was the Executive Director of the HASB and was responsible for organizing and directing the public housing program, supervising all HASB employees, and authorizing payments to outside contractors and vendors. From 2016 to March 2019, Mr. Smith was another high-ranking employee of the HASB who reported directly to Ms. Robinson and was responsible for overseeing the renovation and maintenance work done on residential units, soliciting bids for repair work, receiving contractor invoices, and preparing payment checks. Their scheme involved the creation of fraudulent HASB payment checks for work which had not actually occurred. After collecting those payment checks, the coconspirator contractors would deposit them and bring back a portion of the HASB payment to Ms. Robinson and Mr. Smith. There were four outside contractors involved in the scheme, including Douglas Donley who was doing business as "D. Fresh Contractors." The contractors were the "spokes" of the scheme in that they each communicated and acted with Mr. Smith or Ms. Robinson to effectuate the scheme, but did not cooperate or communicate with each other. A final coconspirator was Ms. Robinson's daughter Tyreisha Robinson who was an employee of the HASB, involved in a romantic relationship with Mr. Donley, and assisted him with his portion of the scheme.

There are several categories of evidence which support the existence of this conspiracy. First, the Government will have past and current employees and board members of the HASB

testify regarding its basic structure, operations, and funding. They will also describe Ms. Robinson and Mr. Smith's duties as HASB employees. Business records will support and corroborate the testimony. The Government will also introduce HASB bank records which will show payments made from HASB to the four contractors involved in the scheme, the deposit or cashing of the checks, and the cash withdrawals. (DE 202 at 10.) The Government will also introduce HASB records such as Accounts Payable Records showing the payments to the contractors. These internal records also include contractor invoices, quotes, and work contracts which will correspond to many of the payments.[3] (*Id.*)

Second, the Government plans to introduce testimony from HASB residents that certain repairs or renovation work was not done at their units. This would show that invoices describing work supposedly done to their units, and for which contractors received paychecks, were false. (*Id.* at 10.) Certain employees of HASB will testify that during the relevant times they occasionally approved invoices without confirming the work listed on the invoice was really done. (*Id.* at 10–11.) These witnesses will also testify they understood this to be an expectation of their continued employment from their supervisors Ms. Robinson and Mr. Smith. (*Id.* at 11.)

Third, some of the contractors themselves will testify that they received payment for work that was not performed. (*Id.*) Some of the contractors will further testify that some of the invoices underlying certain payment checks were fraudulent and that the invoices were prepared by Albert Smith and not the contractors. (*Id.*) Some of the contractors will also testify that they deposited payment checks and brought back a portion of each check in case to either Mr. Smith or Ms. Robinson. (*Id.*)

---

[3] The Court would note that Mr. Smith's motion *in limine* challenging the admissibility of various documents does not challenge the HASB bank records or HASB internal records.

Fourth, the Government will introduce bank records, tax records, income records, and casino records showing Ms. Robinson and Mr. Smith engaged in significant personal financial transactions that exceeded their legitimate income during the time period of the scheme. (*Id.*) This includes records showing these two Defendants lost hundreds of thousands of dollars in cash at casinos during the relevant period and their legitimate income was insufficient to support such spending. (*Id.*) Evidence that a defendant was living beyond their means is relevant to establishing a defendant was the perpetrator of fraud or theft. *See United States v. Lundburg*, 990 F.3d 1087, 1098 (7th Cir. 2021) (evidence that defendant knowingly was living beyond her means was sufficient to support the jury's finding of guilt); *United States v. Ray*, 2015 WL 5038108, at *3 (N.D. Ind. Aug. 25, 2015) (evidence that defendant was living beyond her means through her enormous gambling losses could suggest that she received proceeds of theft, and was not barred by Rule 404(b) or Rule 403). Given the preliminary nature of a *Santiago* proffer, whether or not these specific records support the Government's contention is an issue best left for after the evidence has been examined.

The Court finds that this evidence is sufficient to show, by a preponderance of the evidence, that the Defendants were members in the alleged conspiracy.

### *(3) The Government has sufficiently identified statements made in furtherance of the conspiracy*

In order for a statement to be in furtherance of the conspiracy, there must be "some reasonable basis [to conclude] that the statement furthered the conspiracy." *United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir. 1987). A statement is "in furtherance of" a conspiracy when it promotes the conspiracy's objectives. *United States v. Gajo*, 290 F.3d 922, 929 (7th Cir.

2002). Under this standard, a statement is admissible as in furtherance of the conspiracy even if it is susceptible to alternative interpretations, and "need not have been exclusively, or even primarily, made to further the conspiracy." *Shoffner*, 826 F.2d at 628.

While the Seventh Circuit has held that a proffer does not require the Government to submit "each and every" coconspirator statement it intends to introduce at trial, *McClellan*, 165 F.3d at 554, there must be some indication of the general contents of the statements the Government wants to admit. Courts have found that, where a *Santiago* proffer details the categories of statements the government seeks to admit, this can be sufficient to show, by a preponderance of the evidence, that the statements were made during and in furtherance of the conspiracy. In *United States v. McCellan*, for example, the statements the government sought to admit concerned the following categories of information: (1) deliveries of marijuana; (2) making arrangements to meet with coconspirators; (3) the manner in which the marijuana would be delivered and received; (4) the role and participation of various members; (5) arrangements for transportation; (6) receipt and delivery of marijuana; (7) arrangements and payments with regard to transportation expenses; and (8) arrangements concerning payments of currency to various members. 165 F.3d 535, 554 (7th Cir. 1999). Similarly, in *United States v. Alviar*, the Seventh Circuit determined that the district court did not commit clear error in admitting coconspirator statements where the governments proffer included (1) summaries of the recorded calls between the coconspirators it anticipated presented and (2) summaries of codefendant cooperators' anticipated testimony. 573 F.3d at 540. In line with those cases, this Court has approved *Santiago* proffers previously which have identified "general categories and subjects" that the government anticipated the statements would cover. *See United States v. Luciano*, 2022 WL 2438043, at *3 (N.D. Ind. July 5, 2022) (admitting statements where the government indicated

8

that they intended to include statements "identifying other members of the conspiracy and their roles," "identifying the structure and origin of the conspiracy[,]" and "reviewing a coconspirator's exploits," among other identified categories).

Here, the Government has identified several categories of statements they seek admitted. (DE 202 at 12–13.) The Government's description of these statements identifies the parties to these communications, which demonstrates the involvement of a coconspirator, and the subject of the communications which demonstrates how the communication furthered the conspiracy. (*Id.*)

The Defendants' object to the adequacy of the proffer based on an alleged lack of specificity, and request the Government provide a supplement with details such as the approximate dates of statements and the identities of declarants. This objection will be overruled. The Government has a "relatively low burden of proof" to establish that a statement is made "in furtherance of a conspiracy." *Shoffner*, 826 F.2d at 628. As previously noted, the Seventh Circuit and this Court have previously accepted proffers which provide the categories of statements which the Government seeks to admit as long as they show the statements were made in furtherance of the conspiracy. *McCellan*, 165 F.3d at 554; *Alviar*, 573 F.3d at 540; *Luciano*, 2022 WL 2438043, at *3. The Court finds that the existing proffer is sufficient under this legal standard and declines to order the Government to provide the supplement requested by the Defendants.

The Defendants' objection that some of these statements are not relevant to the conspiracy or did not further it, will also be denied. Ms. Robinson objects to the admission of paragraph III(c) "absent a showing of relevance." (DE 237 at 3.) This paragraph describes communications from Ms. Robinson to her daughter Tyreisha Robinson regarding the

9

recruitment of Mr. Donley to the conspiracy, as well as directions for assisting Mr. Donley to execute the conspiracy, including advising Tyreisha against having a joint bank account with Mr. Donley. (DE 202 at 12.) The relevance of these statements to Ms. Robinson is obvious. These are statements involving her recruiting a new coconspirator and providing instructions to coconspirators on how to conduct the conspiracy. *United States v. Cruz-Rea*, 626 F.3d 929, 937–38 (7th Cir. 2010) (statements to recruit potential coconspirators are in furtherance of a conspiracy) (collecting cases); *United States v. Cox*, 923 F.2d 519, 527 (7th Cir. 1991) (statements to conduct or help conduct the business of the scheme are in furtherance of a conspiracy).

Mr. Donley objects to paragraphs III(bb),[4] (c), and (d). Mr. Donley's objection to paragraph III(bb) argues that because this paragraph discusses efforts to recruit him, and those communications necessarily occurred before he joined the conspiracy, the statements can thus not be used against him. This argument is without legal merit. *United States v. Sophie*, 900 F.2d 1064, 1074 (7th Cir. 1990) (statements by a coconspirator are admissible against another coconspirator who joined after the statements were made).

Mr. Donley's objection to paragraph III(c) likewise lacks merit. As described above, this paragraph describes statements by Ms. Robinson advising Tyreisha Robinson against having a joint back account with Mr. Donley. Mr. Donley's objection claims that Ms. Robinson's motive for making this statement was to avoid the appearance of impropriety instead of to conceal fraud and therefore it was not "in furtherance" of the conspiracy. The Government satisfies its burden

---

[4] The Government's proffer contains a typographical error in Section III, labelling two paragraphs as paragraph "b." To minimize confusion and re-labelling the Court will refer to the second of these paragraphs, describing communications from Albert Smith to Tyreisha Robinson regarding the recruitment of Douglas Donley, as paragraph "bb."

under *Santiago* even if the statement is "susceptible to alternative interpretations, so long as 'some reasonable basis exists for concluding that the statement furthered the conspiracy.'" *Cruz-Rea*, 626 F.3d at 937. Mr. Donley's argument thus must fail. The fact he has offered a competing interpretation to the Government's reasonable interpretation of the statement does not preclude the Government from introducing it. Rather, the jury will consider the competing interpretations along with other relevant evidence and reach a conclusion.

Mr. Donley's objection to paragraph III(d) also fails. This paragraph describes communications between Mr. Donley and Tyreisha Robinson regarding his contracting business and the logistics of fulfilling his role in the conspiracy. Mr. Donley argues the statements by Tyreisha Robinson are unreliable and not credible because of alleged inconsistencies with Tyreisha Robinson's statements to federal prosecutors during a proffer session and the prosecutors' assessment of her credibility. It is well settled law that assessing the credibility of a witness is a question for the jury to resolve at trial. *See e.g. United States v. Franklin*, 188 F.2d 182, 188 (7th Cir. 1951); *see also United States v. Stott*, 245 F.3d 890, 898 (7th Cir. 2001) (collecting cases). As such, the Court will decline to intrude on the jury's purview.

Mr. Smith raises a relevancy objection but does not develop it with analysis or case law. The entirety of Mr. Smith's challenge is "Mr. Smith contests the relevancy of the statements set forth in the Santiago Proffer paragraphs III.c, d, e, and f." (DE 238 at 3.) This contention contains nothing resembling an argument that can be subjected to meaningful review. The Court will accordingly find the objection to be waived as underdeveloped. *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1062–63 (7th Cir. 2020) (Arguments that are underdeveloped, cursory, and lack supporting authority are waived). The Court would further note that paragraphs (e) and (f) describe communications by Mr. Smith during the course of the conspiracy which

makes such a relevancy challenge particularly feeble. Paragraphs (c) and (d) do not specifically refer to Mr. Smith, but it is not a requirement of *Santiago* that in order to be admissible the particular statement must have specific relevance or application to each of the individual defendants in the conspiracy. *See Bourjaily*, 483 U.S. at 175 (summarizing the three elements to be admissible under 801(d)(2)(E)). Rather, coconspirator statements are admissible to the extent the communications are relevant *to the conspiracy* itself, in that the statements were in furtherance of that conspiracy. *Id.*; *United States v. Cozzo*, 2004 WL 1151630, at *2–*3 (N.D. Ill. 2004) (collecting cases and summarizing what types of statements are considered to be "in furtherance" of a conspiracy).

Therefore, the Court finds that the Government has sufficiently identified the statements it seeks to introduce pursuant to *Santiago* and sufficiently identified how those statements were in furtherance of the conspiracy.

### C. Conclusion

Accordingly, the Court finds that the Government has shown that the conversations and statements the Court conditionally admitted above were made during the conspiracy and in furtherance of it. Following the procedures suggested in *Santiago*, 582 F.2d 1128, the categories of statements described above are conditionally admitted pursuant to Rule 801(d)(2)(E) subject to a final ruling before the close of the Government's case once the Court has seen the evidence. This order does not constitute a ruling on the admission of any statement or conversation under alterative theories which may apply, such as admitting statements by an individual defendant against them personally pursuant to Rule 801(d)(2)(A). The Court notes such theories, as referred to the by the Government's proffer (DE 202 at 13–14) seem to apply to many statements

noted in the proffer. To the extent necessary, the Court will address admissibility via alterative theories at trial.

    SO ORDERED.

    ENTERED: October 3, 2023

                                                    /s/ JON E. DEGUILIO
                                                    Judge
                                                    United States District Court