UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:21-CR-64 JD |
| DOUGLAS DONLEY | |

**OPINION AND ORDER**

In advance of sentencing Defendant Douglas Donley, the Court has received from the probation department the Presentence Report ("PSR") and the addendum. The addendum explains that Mr. Donley has three objections to the PSR: (1) he claims that the PSR overstates the loss amount; (2) erroneously increases his offense level by two levels for obstruction of justice; and (3) does not include a two-level reduction in the offense level for acceptance of responsibility. Finding no error in the Sentencing Guidelines calculation in the PSR, the Court will overrule Mr. Donley's objections.

**A. Factual Background**

Following a jury trial, Mr. Donley and two of his codefendants, Tonya Robinson and Albert Smith, were convicted of several counts alleging a public corruption scheme at the South Bend Housing Authority ("HASB"). Ms. Robinson and Mr. Smith were senior executives at the Housing Authority. Ms. Robinson was the Executive Director and Mr. Smith was the Asset Manager. Ms. Robinson and Mr. Smith operated a "hub and spoke" kickback conspiracy scheme using their official positions at HASB. They would use their positions to authorize payment to certain contractors—or in Mr. Donley's case, a pretend contractor—for maintenance work that was not actually performed. Those contractors would then cash the payment checks and return

some of that cash to Mr. Smith and Ms. Robinson while keeping the rest for themselves. In Mr. Donley's case, his then-girlfriend and mother of one of his children, Tyreisha Robinson,[1] participated hand-in-hand in the scheme with Mr. Donley. Mr. Smith would deliver the fraudulent checks to Tyreisha who would then go to the bank, often with Mr. Donley, to deposit or cash the checks. She would return a portion of the money to Mr. Smith. Mr. Donley endorsed some of the checks.

The Government prosecuted this scheme by charging one count of conspiracy to commit bank or wire fraud (Count 1), several counts of bank fraud (Counts 2-7), and two counts of wire fraud (Counts 8 and 9) against all three of these defendants.[2] (DE 63.) Ms. Robinson, Mr. Smith, and Mr. Donley proceeded to trial on these charges. Tyreisha Robinson pleaded guilty to Counts 1 and 7, and testified on behalf of the Government at trial, implicating Mr. Donley and others in the conspiracy. As relevant here, at the end of the Government's case-in-chief, the Court granted Mr. Donley's motion under Federal Rule of Criminal Procedure 29 to dismiss Counts 2, 3, and 4 against him. The Jury then acquitted Mr. Donley of two bank fraud counts (6 and 7) and two wire fraud counts (8 and 9). The Jury convicted him of two counts: Count 1, conspiracy to commit bank or wire fraud; and Count 5, bank fraud.

**A. Mr. Donley's Objections to the PSR**

**(1)** *Loss Amount*

---

[1] To avoid mixing up the defendants, the Court will refer to Tyreisha Robinson as Tyreisha.

[2] There was also a count of federal program theft (Count 10) brought against Ms. Robinson and Mr. Smith. Both were convicted on this count.

Mr. Donley objects to paragraphs 31, 33, 40 and 116[3] of the PSR, claiming that his stated total loss amount should be $242,420 instead of $310,920. Mr. Donley argues that he should not be held responsible for fraudulently cashed check No. 126874 that was the basis of Count 7 of which he was acquitted, nor for the six checks that he did not endorse and for which he was not separately charged. [4] Mr. Donley acknowledges that he was not charged with any crimes specific to these checks. These checks add up to $68,500, which he asks the Court to subtract from the loss amount. With that change, Mr. Donley's total loss amount would be $242,420 instead of $310,920, and his offense level would be increased by 10 levels under U.S.S.G. § 2B1.1(b)(1)(F) instead of 12 levels under subsection (b)(1)(G). The Court will, in part, overrule Mr. Donley's objection.

To begin with, Mr. Donley is adamant that the Court cannot rely for the purposes of sentencing on his acquitted conduct related to Count 7 and check No. 126874. But even if Mr. Donley were right about that, his argument would not affect the guidelines calculation, because the other six checks would still be counted as they're not part of any acquitted conduct, bringing the total to over $250,000. *See* U.S.S.G. § 2B1.1(b)(1)(G) ("If the loss exceed $6,500, increase the offense level as follows: . . . more than $250,000 . . . add 12.").[5] In other words, Mr.

---

[3] The addendum is mistakenly referring to paragraph 115.

[4] Mr. Donley identifies these six checks: Nos. 126501, 126513, 126539, 126562, 126722, 126930.

[5] Mr. Donley acknowledges that the Seventh Circuit precedent requires that this check be counted for determining the total loss amount. *See United States v. McClinton*, 23 F.4th 732, 735 (7th Cir. 2022) ("According to Robinson, the Constitution does not permit the district court's use of acquitted conduct for sentencing purposes. The Supreme Court says otherwise. In *United States v. Watts*, it endorsed this practice "so long as [the acquitted] conduct has been proved by a preponderance of the evidence." 519 U.S. 148, 155–57, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). Time and again, we have relied on *Watts* to reject the same argument Robinson raises now."). That said, he argues that this Court should break with the precedent given that even *McClinton* recognized that this is not a frivolous issue. *See id.* at 735 ("Despite this clear precedent, McClinton's contention is not frivolous. It preserves for Supreme Court review an argument that has garnered increasing support among many circuit court judges and Supreme Court Justices, who in dissenting and concurring opinions, have questioned the fairness and constitutionality of allowing courts to factor acquitted conduct into sentencing calculations."). Given that the amount

3

Donley's argument regarding check No. 126874 is inconsequential, so the Court will focus on the other checks instead.

Under § 1B1.3(a)(1)(A), the defendant can be held responsible for all acts and omissions he "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused." § 1B1.3(a)(1)(A). And in the case of jointly undertaken criminal activity, whether charged as a conspiracy or not, the guidelines instruct that adjustments "shall be determined on the basis of . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." § 1B1.3(a)(1)(B); *see United States v. Salem*, 657 F.3d 560, 564 (7th Cir. 2011); *United States v. Hayes*, 574 F.3d 460, 483-84 (8th Cir. 2009) (affirming the district court's calculation that included loss resulting from reasonably foreseeable acts taken in furtherance of the conspiracy).

Trial evidence shows that, in the Fall 2017, Mr. Smith approached Tyreisha to contact Mr. Donley and bring him into the conspiracy to steal money from HASB. As part of their scheme to defraud HASB, Mr. Donley and Tyreisha created a fictitious entity, "D Fresh Contracting," with Mr. Donley as the purported owner. From there, Mr. Smith would create fraudulent invoices for D Fresh and issue checks to "Doug Donley" which he would give to Tyreisha. In turn, Tyreisha would take the checks to the bank to deposit or to cash them. The money was divided between Mr. Smith and Mr. Donley. Twenty-nine checks were handled this way. Most of the time Mr. Donley went to the bank along with Tyreisha and endorsed the checks. Tyreisha endorsed some checks by signing Mr. Donley's name. In fact, Tyreisha testified

---

of money involved does not affect either the Guidelines calculation, 18 U.S.C. § 3553(a) factors, or restitution payments, the Court need not delve into this question here. The Court is mindful that it can consider proposed Guidelines amendments regarding the treatment of the acquitted conduct as part of its § 3553(a) discussion, *see United States v. Angle*, 598 F.3d 352, 360 (7th Cir. 2010) ("Moreover, even though § 3742(g) precluded the district court from *applying* the 2006 guidelines, the statute did not bar the court from *consulting* the Sentencing Commission's current views as a guide to its exercise of *Booker* discretion."), but—again—by itself, check No. 126874 has no impact on the sentencing factors.

that she endorsed Check No. 126874, in the amount of $7,000, by forging Mr. Donley's signature. There were perhaps six other checks signed by Tyreisha instead of Mr. Donley. Over the course of the conspiracy, there were four bank accounts through which the fraudulent checks were processed. Two of those accounts were in Tyreisha's name only, one of them was first opened by Tyreisha but Mr. Donley was added later, and one of them was opened by both Tyreisha and Mr. Donley as "d/b/a D Fresh Contractors."

Mr. Donley was convicted of two counts. In Count 5, he was found guilty of bank fraud in relation to "presenting check # 126282 to [Centier Bank]." (Superseding Indictment, DE 63 at 15; DE 290 at 6.) And most important for his objection to the PSR, he was also convicted on Count 1, which charged him with conspiracy to commit bank or wire fraud. As part of this conspiracy, Tyreisha and Mr. Donley established a fictitious company, "D Fresh Contractors" whose sole purpose was to be a front for Mr. Smith to issue fraudulent checks to Mr. Donley. D Fresh had no employees and did no work for HASB. For most of the time spanning the conspiracy, Mr. Donley was in Atlanta, although returning to South Bend occasionally for short durations. Yet twenty-nine checks corresponding to purported work by D Fresh were issued to Mr. Donley. That Mr. Donley did not himself endorse each check is of no consequence because his coconspirator, Tyreisha, did that for his benefit. Her testimony at trial was that each fraudulent check was either deposited or cashed with the proceeds divided between Mr. Smith and Mr. Donley as directed by Mr. Smith. This evidence, along with the jury's verdict on the conspiracy charge, supports the finding that Mr. Donley was a willing and knowing participant in the conspiracy to steal money from HASB through the use of checks issued in his name during the timeframe of that conspiracy. Mr. Donley argues that the cashing of these checks is analogous to the acquitted conduct in Count 7 and should likewise be treated as acquitted

conduct. But that is highly speculative. No one can say for sure how the jury reached its verdict relative to Count 7. Moreover, once again, his argument ignores that the jury found Mr. Donley guilty of conspiracy as alleged in Count 1. Therefore, check Nos. 126501, 126513, 126539, 126562, 126722, and 126930 can be counted toward the loss amount. The Court finds that Mr. Donley's total loss amount is $303,920, and that the PSR correctly adds 12 levels under § 2B1.1(b)(1)(G) to Mr. Donley's offense level.

**(2)** *Obstruction of Justice*

Next, Mr. Donley objects to paragraphs 21–24, 31, 34, and 43 of the PSR, arguing that he did not obstruct justice and his offense level should not be increased by 2 levels under § 3C1.1. These paragraphs deal with Mr. Donley's testimony before the grand jury, ultimately finding that he perjured himself and thus obstructed justice. Paragraphs 22 and 23 describe the testimony at issue:

> . . . During his testimony, [Mr. Donley] was advised that he was under oath and that if he willfully said something untruthful, that could amount to a charge of perjury or making a false statement before a grand jury. Mr. Donley was asked about the HASB checks issued to "Doug Donley." He stated that he operated the "D Fresh" business and that he was doing work for the HASB by renovating HASB units. He said that he was doing this work for the HASB during the time that he was living and working in Atlanta, and that he would travel back to South Bend to do the HASB work. Mr. Donley was shown the "D Fresh" invoices; he denied ever preparing or even seeing such invoices. Mr. Donley was shown copies of "Doug Donley" checks; he admitted that he signed some of the checks (and denied that he had signed other checks). In particular, he admitted signing check #126282, which formed the basis of Count 5 of the Indictment and which was payment for renovation work that never happened according to the tenant who lived there and who latest testified at trial. During his grand jury testimony, Mr. Donley admitted that he sometimes brought cash from the HASB checks back to Albert Smith, but he said that he only did this 2 or 3 times and that the money he brought back was payment for appliances and supplies that Mr. Donley had used from the HASB and for which he owed payment to the HASB.

6

> The evidence at trial established that Mr. Donley's grand jury testimony was materially false—that is, the evidence established that Mr. Donley was not doing any work for the HASB at all, the "D Fresh" company did not actually exist, all invoices from that company were entirely fraudulent, cash was brought back numerous times to Albert Smith, and no cash was ever brought to HASB as legitimate payment for appliances or supplies. As such, Mr. Donley's grand jury testimony was perjurious, and it was a willful attempt to obstruct and impede the administration of justice with respect to the investigation and prosecution of the instant case.[6]

(DE 359 ¶¶ 22–23.) Having reviewed and compared Mr. Donley's testimony before the grand jury (DE 360-1) with trial evidence, the Court finds that the PSR correctly added 2 levels to Mr. Donley's offense level under § 3C1.1.

"The sentencing guidelines authorize [an enhancement under § 3C1.1] if the defendant 'willfully obstructed or impeded, or attempted to obstruct or impede' the investigation or prosecution of the offense of conviction and 'the obstructive conduct related to . . . the . . . offense of conviction . . . .'" *United States v. Chychula*, 757 F.3d 615, 619 (7th Cir. 2014) (citing U.S.S.G. § 3C1.1). "A finding that the defendant committed perjury supports this enhancement." *United States v. Riney*, 742 F.3d 785, 790 (7th Cir. 2014) (citing *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) and U.S.S.G. § 3C1.1, cmt. n.4(B)). "A defendant commits perjury if, while testifying under oath, he 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *Id.* (quoting *United States v. Johnson*, 680 F.3d 966, 981 (7th Cir. 2012)). "To apply the enhancement based on perjury, 'the district court should make a finding as to all the factual predicates necessary for a finding of perjury: false testimony, materiality, and willful intent." *Id.* (citing *United States v. Johnson*, 612 F.3d 889, 893 (7th Cir. 2010)). "For these purposes a matter is 'material' if it concerns information 'that, if believed, would tend to influence or affect

---

[6] Paragraphs 34 and 35 of the PSR also deal with the same subject matter.

the issue under determination.'" *Id.* (citing U.S.S.G. § 3C1.1, App. n.6). "The statement need not actually affect the decision." *United States v. Grigsby*, 692 F.3d 778, 785 (7th Cir. 2012).

Mr. Donley argues that he truthfully testified before the grand jury that he worked for HASB because he worked for KTR, a company owned by codefendant Archie Robinson III, which in turn did work for HASB. This contention misrepresents the substance of Mr. Donley's grand jury testimony. In the grand jury, Mr. Donley mentioned that he worked for HASB when he was employed by Archie Robinson and KTR. However, he also testified that before KTR, he had his own company, D Fresh Contracts, staffed by Reuben and his four guys (Grand Jury Tr., DE 360-1 at 11–13.) He testified that he ran his D Fresh business for eight months while he was living in Atlanta, Georgia. (Grand Jury Tr., DE 360-1 at 10, 13.) Mr. Donley told the grand jury that he himself didn't know how to do all the contracting work, but that his crew knew how to do it all. (Grand Jury Tr., DE 360-1 at 14.) He described coming up to South Bend from Atlanta about once a month, getting a check, paying his workers, getting supplies, and then going back to Atlanta. (*Id.* at 10.) He said he worked in Atlanta four days a week and would come to South Bend during the three days off. (*Id.*) Mr. Donley said that the work projects would take "a couple of weeks" to complete, with the "shortest amount of time" being "four or five days." (*Id.* at 54.) He again described being in Atlanta with his crew getting the job done at HASB, and that he would come back to South Bend, pick up the payment check, pay his crew, and get materials for the next HASB job. (*Id.* at 17.) He said that "I just got the units I needed to do, turned them, got the checks, paid for the materials, paid my workers." (*Id.* at 26.) He testified that he would just get one check per job, and from that check he would cover supplies and pay his workers in cash. (*Id.* at 31–32.) He said that he estimated that he worked on more than ten, but less than twenty-five, HASB properties. (*Id.* at 41-42). At first, Mr. Donley said that Tyreisha didn't help him

8

with the business at all. (*Id*. at 20.) Then he said that Tyreisha did cash one check for him, because he didn't have an account and he "couldn't cash that large amount of check because I didn't have the account." (*Id*. at 20–21.) He said that it was just one check, because "I was able after that to get my account up and go on after that." (*Id*. at 21.) Later, when asked whether he deposited or cashed checks, he said that he just cashed them. (*Id*. at 79.) Mr. Donley described making bids for HASB jobs in person, and never in email. (*Id*. at 22.) He described getting a phone call from either Steve Peterson or Mr. Smith saying that he had won the bid for a HASB job, and that he would call his crew to start the job, and that if he was in Atlanta, he would have to find the next flight out from Atlanta. (*Id*. at 25.)

Mr. Donley was asked whether he ever returned some of the funds from a check to HASB, and he answered "[m]aybe a few times." (*Id*. at 67.) Mr. Donley said that the reason he was bringing money back to Mr. Smith was for appliances and supplies. (*Id*. at 68–69.) All of this testimony about his work at HASB and returning cash to repay for the costs of the appliances was perjury: it was false, material, and willful. *United States v. Riney*, 742 F.3d 785, 790 (7th Cir. 2014) ("A defendant commits perjury if, while testifying under oath, he gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." (quotation marks and citation omitted)). First, the testimony was false because D Fresh Contracting was not an actual business—it had no employees and it did not do work for HASB. The testimony about Mr. Donley refunding Mr. Smith for appliances and supplies was also false. There were no appliances or supplies and there were no refunds. At trial, Tyreisha testified that Mr. Donley never took cash to Mr. Smith, and that only she delivered the money to him. The Court finds Tyreisha's testimony credible on this issue, and to the extent that she may have previously told

9

the agents that the cash she took to Mr. Smith was to repay for the appliances or supplies has now been repudiated under sworn testimony, and there's nothing to corroborate Mr. Donley's claim to the contrary. Second, the testimony was material because it concerns information that, if believed, would tend to influence or affect the issue under determination, namely, whether Mr. Donley was doing legitimate contract work for HASB. And finally, Mr. Donley provided this false and material testimony with willful intent to cover his tracks so as to avoid criminal liability. The Court does not discern that it was the product of confusion, mistake, or faulty memory. Therefore, the PSR appropriately increased Mr. Donley's offense level by 2 levels for obstruction of justice.

**(3)** *Failure to Accept Responsibility*

Mr. Donley contends that his offense level should be reduced for acceptance of responsibility under § 3E1.1. The extent of his argument is that he "accepts the jury verdict in all respects" and "acknowledges he was convicted on Counts 1 and 5." (DE 360-4 at 6.) Mr. Donley's argument is undeveloped, perfunctory, and baseless.[7]

According to Application Note 2 to § 3E1.1, a person who puts the government to its burden of proof at trial is generally not entitled to an adjustment for acceptance of responsibility:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute

---

[7] Undeveloped and perfunctory arguments are waived. *See United States v. Davis*, 29 F.4th 380, 385 n.2 (7th Cir. 2022).

to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

Mr. Donley put the Government to its burden of proof at trial, and none of the exceptions stated in Application Note 2 pertain. Moreover, while there may be extraordinary circumstances in which adjustments under both § 3C1.1 and § 3E1.1 may apply, "[c]onduct resulting in an enhancement under §3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." Such is the case here. As a result, the Court overrules Mr. Donley's objection on the question of acceptance of responsibility.

### B. Conclusion

For these reasons, the Court OVERRULES IN PART Mr. Donley's objections and FINDS that his total offense level is 21, as stated in paragraph 47 of the PSR.

SO ORDERED.

ENTERED: February 27, 2024

                                                    /s/ JON E. DEGUILIO  
                                                    Judge  
                                                    United States District Court